IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CHERYL L. PORTER,<br><br>    Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | CV 13–101–M–DWM-JCL<br><br>FINDINGS &<br>RECOMMENDATION |

Plaintiff Cheryl Porter brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security denying her application for disability insurance benefits under Titles II of the Social Security Act, 42 U.S.C. §§ 401-434.

Porter protectively applied for benefits in April 2008, alleging disability since July 2007, due to low back and neck pain, headaches, thoracic outlet, carpal tunnel, and blurred vision. (Tr. 48; 143-46; 174 ). Porter's application was denied initially and on reconsideration, and Porter requested a hearing. (Tr. 184-90). Porter appeared with counsel at her administrative hearing in front of an Administrative Law Judge in August 2011. (Tr. 38-83). In September 2011, the

PAGE 1

ALJ issued a decision denying Porter's application for benefits and finding her not disabled within the meaning of the Act. (Tr. 18-27). The Appeals Council denied Porter's subsequent request for review, making the ALJ's decision the agency's final decision for purposes of judicial review. (Tr. 1-6.) Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

Porter was 53 years old on her alleged onset date, and 58 years old at the time of the ALJ's decision.

I.      **Standard of Review**

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record." *Batson v.*

*Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193 (*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999). This Court "may not substitute its judgment for that of the Commissioner." *Widmark*, 454 F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

## II.  Burden of Proof

To establish disability, a claimant bears "the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Batson*, 359 F.3d at 1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520. The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). At the first step, the ALJ will consider whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If not, the ALJ must determine at step two whether the claimant has any impairments that qualify as "severe" under the regulations. 20

C.F.R. § 404.1520(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will compare those impairments to the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed impairment, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(iii). If, however, the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).

### III. Discussion

Following the steps in the sequential evaluation process, the ALJ first found that Porter met the insured status requirements of the Act through December 31, 2013, and had not engaged in substantial gainful activity since her alleged onset date. (Tr. 20). The ALJ found at step two that Porter had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, thoracic outlet syndrome, status post bilateral carpal tunnel release surgery, and headaches.

(Tr. 20). At step three, the ALJ determined that Porter did not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments. (Tr. 20). The ALJ also found that while Porter's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence, and limiting effects of th[o]se symptoms [were] not credible to the extent they [were] inconsistent with [her] residual functional capacity assessment." (Tr. 23). The ALJ next determined that Porter retained the residual functional capacity to perform a range of limited range of light work, and could perform her past relevant work as a phone sales operator and title clerk. (Tr. 21, 26).

Porter argues the ALJ erred by discounting the opinions of her treating primary care physicians, Dr. Douglas Pittman and Dr. Scott Janke.

A treating physician's opinion is entitled to greater weight than that of an examining or reviewing physician on the basis that he has a "greater opportunity to observe and know the patient." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(c)(2).

If the opinion of a treating physician is uncontradicted, an ALJ must give

"clear and convincing" reasons to reject the opinion. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). To discount the controverted opinion of a treating physician, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). Similar standards apply to the ALJ's evaluation of an examining physician's opinion. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006).

      1.    <u>Dr. Douglas Pittman</u>

Porter alleges she has been disabled since July 12, 2007, when she injured her back at work. The injury happened when Porter missed a chair while sitting down, and fell to the floor. (Tr. 257-59). Porter went to the emergency room, at which time x-rays of her cervical and lumbar spine showed no acute abnormalities. (Tr. 260-61). Her cervical spine showed mild curvature and mild C5-6 disk space narrowing, and her lumbar spine showed moderate disk space narrowing at L4-5 and mild L5-S1 disk space narrowing. (Tr. 260-61).

Five days later, Porter followed up with her primary care physician Dr. Douglas Pittman. (Tr. 290). Dr. Pittman prescribed pain medication, muscle relaxants, and physical therapy. (Tr. 290). He also provided Porter with work excuses, and ordered MRIs. (Tr. 290). Porter's cervical MRI showed mild

PAGE 6

scoliosis, no vertebral compression fractures, and minimal posterior disk protrusion at C4-5, C-5-6, and C6-7 with no neural foraminal narrowing. (Tr. 285). Her lumbar MRI showed mild abnormalities indicative of chronic degenerative changes. (Tr. 286).

Dr. Pittman continued as Porter's primary care physician for the next two years. During that period, Dr. Pittman generally saw Porter once every month or two for her ongoing back pain, and continued to prescribe pain medications and muscle relaxants. (Tr. 288-300; 317-330). Dr. Pittman also referred Porter to various specialists for additional testing. For example, Dr. Pittman referred Porter to Dr. John Stephens in September 2007 for an EMG/nerve-conduction study, and to Dr. Robert Hollis in December 2007 for a neurosurgical evaluation. (Tr. 275-76; 279-81). Dr. Pittman referred Porter to Dr. Donald Stone for another EMG/nerve-conduction study in July 2008. (Tr. 312-14). And when an MRI scan in September 2008 showed progression of Porter's degenerated disk, Dr. Pittman referred her to Dr. Wilson for an orthopedic evaluation. (Tr. 315, 328). In June 2009, Dr. Pittman completed a Certificate of Condition form for purposes of Porter's Workers Compensation claim. (Tr. 333). Dr. Pittman indicated that Porter was unable to return to any type of employment due to her chronic back pain. (Tr. 333). Dr. Pittman saw Porter for the last time in August 2009, at which

time he reported that she "does have continued back pain which is reasonably controlled" with medication. (Tr. 317, 318, 320). In December 2009, Porter transferred her care to Dr. Scott Janke. (Tr. 338).

Porter argues the ALJ erred because he did not discuss or even mention Dr. Pittman's medical findings and opinions. While it is true that the ALJ did not mention Dr. Pittman by name, it is evident from the text of his decision that he considered at least some of Dr. Pittman's records. For example, the ALJ discussed the results of the MRIs ordered by Dr. Pittman just days after Porter's injury. (Tr. 23). The ALJ also mentioned a treatment note from December 2008, in which Dr. Pittman indicated that Porter was not interested in pursuing the "pool therapy" recommended by Dr. Wilson, but "would consider epidural injections." (Tr. 24; 321). Finally, the ALJ found it significant that Dr. Pittman observed during his final visit with Porter in August 2009 that she "did not have significant muscle wasting and that her back pain was 'reasonably controlled'" with medication. (Tr. 24; 320).

The ALJ did not, however, mention or discuss the fact that Dr. Pittman excused Porter from work following her injury in July 2007, and as of June 2009 still had not released her to return. The ALJ completely failed to address Dr. Pittman's opinion that Porter could not work due to the severity of her chronic

PAGE 8

back pain. (Tr. 333). While this Court might well be able to provide reasons of its own for discounting Dr. Pittman's opinion, the Ninth Circuit has made clear that reviewing courts are "constrained to review the reasons the ALJ asserts" and should not engage in an independent analysis of the medical records. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). It would be error for this Court to identify reasons for rejecting Dr. Pittman's opinion that could have been provided by the ALJ, but were not. *See Stout v. Commissioner of Social Security*, 454 F.3d 1050, 1054 (9th Cir. 2006). *See also Pinto v. Massannari*, 249 F.3d 840, 847 (9th Cir. 2001) (a reviewing court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision"). The ALJ erred by not addressing Dr. Pittman's opinion that Porter was not capable of working due to her chronic back pain.

While "[a] decision of the ALJ will not be reversed for errors that are harmless,"[1] the Court cannot consider an error harmless "unless it can confidently conclude that no reasonable ALJ, when fully crediting that [evidence], could have reached a different disability determination." *Stout v. Commissioner Social Security*, 454 F.3d 1050, 1056 (9th Cir. 2006). The Court cannot say with confidence that no reasonable ALJ, when fully crediting Dr. Pittman's opinion that

---

[1] *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Porter was unable to work, could have reached a different disability determination. Consequently, the ALJ's failure to discuss Dr. Pittman's opinion and the fact that he never released Porter to return to work during the two year period he treated cannot be viewed as harmless, and this case should be remanded.

The next question then, is whether to remand for further administrative proceedings or for an immediate payment of benefits. According to the Ninth Circuit, the Court should credit evidence as true and remand for an immediate award of benefits only if: "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citations omitted).

The ALJ is in a better position than this Court to evaluate the medical evidence, and giving the ALJ the opportunity to consider Dr. Pittman's opinion on remand will remedy what this Court has identified as a defect in the original administrative proceedings. As the Ninth Circuit explained when reaching a similar assessment in *McAllister,* "[t]here may be evidence in the record to which the [Commissioner] can point to provide the requisite specific and legitimate [or

PAGE 10

clear and convincing] reasons for disregarding the testimony of [the claimant's] treating physician. Then again, there may not be. In any event, the [Commissioner] is in a better position that this court to perform this task." *McAllister*, 888 F.2d at 603. *See also Anderson v. Barnhart*, 2004 WL 725373, *10 (N.D. Cal. 2004) (remanding for reconsideration where "the ALJ failed to adequately explain his reasons for rejecting [treating physician's] conclusions as to work restrictions and [Claimant's] testimony with respect to the extent and effect of his pain...."); *Perry v. Astrue*, 2009 WL 435123 (S.D. Cal. 2009) (remanding for further proceedings where the ALJ failed to cite sufficient reasons for rejecting the treating physician's opinion); *Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990) (in the exercise of its discretion, the Ninth Circuit remanded for further proceeding "because there may be evidence in the record to which the ALJ can point to provide the requisite specific and legitimate reasons for disregarding [the treating physician's] opinion.").

It is also significant that the ALJ discredited Porter's subjective testimony and the lay witness testimony in part because it was not supported by the objective medical evidence. If, on remand, the ALJ were to accept Dr. Pittman's opinion, it would in turn be necessary for him to reevaluate Porter's credibility and the lay witness testimony.

PAGE 11

Accordingly, this case should thus be remanded for the limited purpose of allowing the ALJ to specifically address Dr. Pittman's opinion that Porter could not work due to her chronic back pain, and reevaluating Porter's credibility and the lay witness testimony if need be. The ALJ's decision is otherwise supported by substantial evidence and free of legal error.

2.  Dr. Scott Janke

Porter argues the ALJ also erred by not giving more weight to the opinion of Dr. Scott Janke, who has been Porter's primary care physician since December 2009. Dr. Janke has treated Porter's back pain primarily with pain medication and muscle relaxants, and occasionally steroid injections. (Tr. 338-53; 356-85; 411-20).

In May 2011, Porter participated in a functional capacity assessment with physical therapist Susan Brakefield. (Tr. 392-400). Brakefield found that Porter's physical abilities were quite limited, but qualified the assessment as "conditionally valid" given Porter's "submaximal effort." (Tr. 394). Approximately one week later, Dr. Janke partially completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) based on Brakefield's assessment. (Tr. 386-91). Consistent with Brakefield's assessment, Dr. Janke limited Porter to sitting 10 to 15 minutes at a time, standing 5 to 10 minutes at a time, and occasionally

walking short distances. (Tr. 387). Porter argues the ALJ erred by not giving more weight to Dr. Janke's opinion.[2]

The ALJ considered Dr. Janke's opinion, but gave it little weight in part because it was "not accompanied by any significant explanation for the limitations endorsed." (Tr. 26). Dr. Janke identified Porter's limitations by check-mark notation, and then referred the reader to the "FCE for details." (Tr. 386-91). As the ALJ noted, however, Brakefield found that Porter put forth "submaximal effort" during the assessment and Dr. Janke's own treatment notes reflected that he questioned its validity. (Tr. 25-26).

Dr. Janke reviewed Brakefield's report, noting that Porter was "found to be able to occasionally bend, climb stairs and balance" but "was only able to lift 1-2 pounds above her head occasionally, [] could lower from the desk to a chair only 5 pounds with the right hand and 3 pounds with the left hand," and was "only able to carry 2 pounds and push/pull 8.9 pounds." (Tr. 412). Dr. Janke found "[t]here were a number of red flags as a result of this." (Tr. 412). To begin with, Dr. Janke

---

[2] Because Dr. Janke's opinion was contradicted by those of the state agency reviewing physicians, the ALJ could reject it for specific and legitimate reasons. *See e.g. Bray v. Commissioner of Social Security Administration*, 554 F.3d 1219, 1228 n. 8 (9th Cir. 2009); *Widmark v. Barnhart*, 454 F.3d 1063, 1066-67 (9th Cir. 2006).

explained that such severe limitations "would almost make [Porter] totally an invalid in the home and not capable of self-care and in my professional career I have not seen an FCE this low." (Tr. 412). The "biggest problem" Dr. Janke had with the validity of the results was "the fact that [Porter's] heart rate really didn't change at all through the entire FCE which in my mind does not show a good effort." (Tr. 412). Brakefield had similar concerns, noting that although Porter "reported her pain as a constant 8 to 10, [] her pulse rates remained fairly low throughout the [a]ssessment." (Tr. 392). In Dr. Janke's opinion, "the FCE represents what [Porter] is willing to do and not what she is potentially capable of doing." (Tr. 412).

The ALJ reasonably discounted Dr. Janke's opinion as set forth on the Medical Source Statement of Ability to do Work-Related Activities (Physical) form because it lacked "any significant explanation" and was expressly premised on a functional capacity evaluation that even Dr. Janke did not believe was a valid representation of Porter's physical abilities. The ALJ is was a sufficiently specific and legitimate basis for rejecting Dr. Janke's opinion.

3. Dr. Robert Hollis

Porter next maintains the ALJ misconstrued the results of a neurological evaluation completed by examining neurosurgeon Dr. Robert Hollis, who saw

Porter in December 2007 on referral from Dr. Pittman.

Dr. Hollis described Porter as cooperative, but noted she "report[ed] significant pain with any movement and demonstrate[d] a very cautious pattern." (Tr. 280). He diagnosed her with multilevel degenerative disk disease with symptomatic spondylosis and myofasical syndrome with associated pain behavior. (Tr. 280). Noting that Porter "also has positive electrodiagnostic testing with negative imaging," Dr. Hollis said he was "not able to easily reconcile the electrodiagnostic finding." (Tr. 280). What Dr. Hollis could say, however, is that he did "not see any surgical lesions in her cervical or lumbar spine and [thought] that her myofasical syndrome and symptomatic spondylosis should be controlled conservatively with physical therapy, acupuncture, chiropractic care, and medicative therapy as suggested by her primary care physician, Dr. Pitman." (Tr. 280).

While Porter claims the ALJ "extolled" Dr. Hollis's report as a basis for finding her not credible,[3] review of his decision shows that he did no such thing. The ALJ simply summarized Dr. Hollis's findings, noting for example that he "found degenerative disk disease of the cervical and lumbar spine, but no evidence of neurologic impingement," and considered them in conjunction with the rest of

---

[3] (Doc. 11, at 10).

PAGE 15

the objective medical evidence when assessing Porter's credibility and residual functional capacity. (Tr. 23).

## IV. Conclusion

For the reasons set forth above,

IT IS RECOMMENDED that Porter's motion for summary judgment be granted, the Commissioner's motion for summary judgment be denied, and the Commissioner's decision be reversed. This matter should be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED this 30th day of April, 2014

*Jeremiah C. Lynch*
Jeremiah C. Lynch
United States Magistrate Judge